# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **TERRY RAY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | **Civil Action No. 08-S-564-NE** |
| **TENNESSEE VALLEY** ) | |
| **AUTHORITY, and G.UB.M.K.** ) | |
| **CONSTRUCTORS,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Terry Ray originally filed this lawsuit in the Circuit Court of Limestone County, Alabama, against the Tennessee Valley Authority ("TVA"), a federally chartered corporation, and G.UB.M.K. Contractors ("GUMBK"), an Alabama corporation, after he sustained injuries while working at the TVA facility at Browns Ferry Nuclear Plant in North Alabama.[1] Plaintiff's complaint contained two counts against both defendants: one for willful and wanton conduct, and another for workers' compensation benefits. The case was removed to this court by joint action of defendants on April 2, 2008.[2] On April 28, 2008, this court granted defendants' motion to sever and remand the workers' compensation claim to the

---

[1] *See* doc. no. 1 (Notice of removal), Ex. 1 (State court complaint).

[2] *See* doc. no. 1.

Circuit Court for Limestone County, Alabama, pursuant to 28 U.S.C. § 1445(c).[3] The court later dismissed all claims against GUBMK pursuant to a joint stipulation of dismissal filed by plaintiff and GUBMK.[4] The only remaining claims pending in this court are plaintiff's claims that TVA's willful and wanton actions proximately caused his injuries. The action now is before the court on the motion for summary judgment filed by TVA asserting that it is protected from plaintiff's claims pursuant to the Alabama Workers' Compensation Act, Alabama Code § 25-5-1 *et seq.* (1975).[5]

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[6] "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

---

[3] *See* doc. no. 7.

[4] *See* doc. no. 16 (Order dismissing GUBMK).

[5] *See* doc. no. 18 (TVA's motion for summary judgment).

[6] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure. The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable [factfinder] to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (internal quotations and citation omitted) (bracketed text supplied).

## II. SUMMARY OF FACTS[7]

### A. The Contract

TVA and GUBMK entered into an agreement during June of 1999, by the terms of which GUBMK agreed to provide a variety of services at TVA facilities, including the provision of personnel to augment TVA's staff.[8] Regarding the nature

---

[7] In response to TVA's motion for summary judgment, plaintiff stated that he "adopts the Defendant's Statement of Undisputed Facts as true." Doc. no. 21 at 6.

[8] *See* doc. no. 19, Ex. 3 (Contract between TVA and GUBMK) at document bearing TVA Stamp No. 59.

of employment, the contract, provides, in part:

> "During the life of this Agreement TVA may request, and CONTRACTOR agrees to provide when so requested, qualified support personnel in order to perform a broad range of staff augmentation functions . . . .
>
> All work activities of CONTRACTOR-furnished support personnel shall be performed under the direction, supervision, and control of TVA, and TVA shall be responsible for requests and directions issued by employees of TVA to CONTRACTOR's and its subcontractors' employees providing support services to TVA hereunder.  However, CONTRACTOR's as well as its subcontractors' employees providing support services to TVA hereunder shall continue as CONTRACTOR's or its subcontractors' employees, as the case may be, and shall not become employees of TVA. . . .
>
> TVA shall be responsible for providing appropriate working space and support facilities . . . .
>
> CONTRACTOR-furnished support personnel shall provide support services pursuant to the direction, supervision, and control of TVA.
>
> TVA shall be solely responsible for the acts and omissions of such personnel during the assignment of such personnel to TVA and within the scope of their TVA-assigned duties . . . .
>
> TVA shall have the right to reject any assigned support personnel considered by TVA, at any time, in its sole discretion, not to be acceptable or qualified to perform the assigned work."[9]

The "Idemnity" section of the contract provides, in part, that "CONTRACTOR shall be an independent contractor for all purposes of this Agreement, and all persons

---

[9] *Id.*, Ex. 3 at document bearing TVA Stamp No. 59.

engaged in carrying out any of CONTRACTOR's obligations hereunder shall be the servants of CONTRACTOR or its subcontractors and not the servants or agents of TVA."[10]

The contract further provided that TVA could "add or delete specific items of work," terminate "the performance of work . . . whenever the [TVA] Contracting Officer, in his/her sole judgment, shall determine that such termination is in the best interest of TVA," and "may . . . at any time and for any reason, suspend the performance of all or any portion of the work to be performed" under the contract.[11] The performance of work under the contract also could be terminated by GUBMK.[12]

The contract also provided that personnel who augmented TVA's staff were to be paid in accordance with the "TVA Project Maintenance and Modification Agreement" entered into between TVA and various unions. TVA reimbursed GUBMK for all Federal Insurance Contributions Act ("FICA") taxes, federal and state unemployment taxes, and any other payroll taxes required by law. Additionally, TVA provided workers' compensation insurance for GUBMK employees working under the contract.[13] TVA provided the workers' compensation insurance through its

---

[10] *Id*., Ex. 3 at document bearing TVA Stamp No. 77.

[11] *Id*., Ex. 3 at document bearing TVA Stamp Nos. TVA 55, 83, and 88.

[12] *Id.*, Ex. 3 at document bearing TVA Stamp No. 83.

[13] *Id*., Statement of undisputed facts, ¶ 5.

plan administrator, Zurich Insurance Company, and TVA paid workers' compensation benefits to or on behalf of plaintiff through Zurich Insurance.[14]

**B.     Plaintiff's Staff Augmentation Assignment with TVA**

TVA employed plaintiff as a truck driver from 1972 until his retirement in 1994.[15] Since 2002, plaintiff has worked for TVA through GUBMK as a "staff augmentation truck driver."[16] In that position, plaintiff was assigned to the Heavy Equipment Division based out of TVA's maintenance facility in Muscle Shoals, Alabama, and he primarily hauled heavy equipment between TVA facilities in North Alabama.[17] Plaintiff testified that "[t]he only way I knew I worked for GUBMK was it was on my paycheck. Other than that . . . [GUBMK] didn't have anything to do with us."[18]

At the time of the accident that forms the basis of this action, plaintiff worked under the supervision of TVA foreman Charles Gresham, who gave plaintiff his daily work assignments and route sheets related to those assignments.[19] Gresham also

---

[14] *See* doc. no. 19, Statement of undisputed facts, ¶ 6.

[15] *Id.*, Ex. 5 (Deposition of plaintiff), at 11.

[16] *Id.*

[17] *Id.*

[18] *Id.*, Ex. 5 (Deposition of plaintiff) at 26 (bracketed alteration added).

[19] *See* doc. no. 19, Statement of undisputed facts, ¶¶ 8-9.

reviewed plaintiff's timesheets and approved his time off from work.[20]

TVA furnished plaintiff with all the equipment he needed to perform his duties, including a TVA truck and lowboy trailer. TVA personnel performed routine maintenance on the truck in accordance with a TVA maintenance schedule, and TVA provided plaintiff with a fuel card to purchase fuel for the truck. TVA also issued plaintiff a hard hat, gloves, safety glasses, and ear plugs to perform his duties.

**C.     The Accident**

On April 20, 2006, Gresham instructed plaintiff to drive to the Browns Ferry Nuclear Plant to load a man-lift onto a TVA tractor-trailer, and then haul the man-lift to TVA's facility in Muscle Shoals, Alabama.[21] Plaintiff was ejected from the man-lift as he drove it onto the tractor-trailer and he sustained severe and permanent injuries from the accident.[22] Plaintiff's claims of willful and wanton conduct allege that TVA failed to provide him with safety restraint devices that are designed to prevent the type of accident in which he was injured, and that TVA had knowledge of the need for such devices.[23]

---

[20] *Id.*, Statement of undisputed facts, ¶ 9.

[21] *Id.*, Ex. 2 (Declaration of Charles A. Gresham), ¶ 6.

[22] *Id.*, Statement of undisputed facts, ¶ 13.

[23] *See* doc. no. 1 (Notice of removal), Ex. 1 (Complaint), ¶¶ 7-8.

### III.  DISCUSSION

TVA argues that plaintiff's tort claims against it are barred by the Alabama Workers' Compensation Act because it was a "special employer" of plaintiff.

"Alabama law, like that of other states, stipulates that when an employee covered by the [Alabama Workers' Compensation] Act suffers from an injury in an on-the-job accident, benefits under the Act are the exclusive remedy available against the employer." *Tweedy v. Tennessee Valley Authority*, 882 F.2d 477, 479 (11th Cir. 1989) (citing *Steagall v. Sloss-Sheffield Steel & Iron Co.*, 205 Ala. 100, 101, 87 So. 787, 788 (1920); Ala. Code § 25-5-53 (1975)) (bracketed alteration added). Specifically, the Alabama Workers' Compensation Act includes an exclusive remedy provision, which provides that no employer "shall be held civilly liable for personal injury . . . to the employer's employee . . . whose injury . . . is due to an accident . . . which . . . originates in the employment." Ala. Code § 25-5-53 (1975). Alabama law is well established that this "exclusive remedy provision extends to 'special employers,' which have been described as 'individuals or businesses who, for practical purposes, may be considered primary or co-employers of the injured employee.'" *Gaut v. Medrano*, 630 So. 2d 362, 364 (Ala. 1993) (quoting *Rhodes v. Alabama Power Co.*, 599 So. 2d 27, 28 (Ala. 1992)). The Alabama Supreme Court has adopted the following test to determine whether an employer qualifies as a

"special employer":

> "When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
>
> > (a) the employee has made a contract of hire, express or implied, with the special employer;
> >
> > (b) the work being done is essentially that of the special employer; and;
> >
> > (c) the special employer has the right to control the details of the work."

*Terry by Terry v. Read Steel Products*, 430 So. 2d 862, 865 (Ala. 1983) (quoting 1C A. Larson, *The Law of Workmens Compensation*, § 48 (1980)). The second and third prongs of the this test are not in dispute. In response to TVA's motion for summary judgment, plaintiff conceded that "it is clear that the work being performed by the Plaintiff was essentially that of [TVA] and that [TVA] had the right to control the details of the Plaintiff's work."[24] Plaintiff argues only that TVA cannot prove the first element of the test: that is, that an express or implied contract of hire existed between himself and TVA.

Plaintiff asserts that a complete reading of the contract between TVA and GUBMK shows that no contract of hire existed between plaintiff and TVA at the time of his accident. Specifically, plaintiff argues that language in the contract stating that

---

[24] Doc. no. 21 at 10.

staff augmentation employees "shall not become employees of TVA" demonstrates that no contract of hire, express or implied, was created between TVA and employees such as himself. Plaintiff relies on the "Support Personnel" section of the contract, which states that "CONTRACTOR's . . . employees providing support services to TVA hereunder shall continue as CONTRACTOR's . . . employees . . . and shall not become employees of TVA."[25] Plaintiff also relies on the "Indemnity" section of the contract, which states that "all persons engaged in carrying out any of CONTRACTOR's obligations hereunder shall be the servants of CONTRACTOR or its subcontractors and not the servants or agents of TVA."[26]

In reply, TVA asserts that a special employer relationship may be established between itself and plaintiff despite provisions in the contract that designate GUBMK as plaintiff's employer. TVA directs the court to the decision of the Alabama Supreme Court in *Bechtel v. Crown Central Petroleum Corp.*, 495 So. 2d 1052 (Ala. 1986), holding that evidence indicating that the direct employer was the plaintiff's employer "is not evidence that [the contracting company] was *not* [plaintiff's] employer, because both the [direct employer] and [the contracting company] could, under certain fact situations, be considered co-employers of [plaintiff]." *Bechtel*, 495

---

[25] Doc. no. 19, Ex. 3 at document bearing TVA stamp no. 59.

[26] Doc. no. 19, Ex. 3 at document bearing TVA stamp no. 77.

So. 2d at 1054 (emphasis original) (bracketed alterations added). *See also Pinson v. Alabama Power Co.*, 557 So. 2d 1236, 1238 (Ala. 1990) (holding that plaintiff was an employee of Alabama Power Company despite a contract provision that designated plaintiff as an employee of the direct employer).

Likewise in *Young v. TVA*, No. 5:04-CV-594-JEO, 2005 WL 61333386 (N.D. Ala. Aug. 8, 2005), *aff'd*, 439 F.3d 1274 (11th Cir. 2006), this court held that an implied contract for hire existed between TVA and a staff augmentation employee even though the contract between TVA and the employee's direct employer stated that "it is expressly understood that such personnel shall continue as Contractor's or its subcontractor's employees, as the case may be, and *shall not become employees of TVA*." *Young*, No. 5:04-CV-594-JEO, 2005 WL 6133386, at *1 (emphasis added). In granting TVA's motion for summary judgment on the basis that TVA was a special employer of plaintiff, this court held:

> The court finds the evidence shows that there was an implied contract between the plaintiff and TVA. The defendant set the plaintiff's wages pursuant to the contract and union schedules; it paid [the direct employer] for [plaintiff's] wages; covered his worker's compensation; supervised and controlled his activities; made his assignments; approved the time sheets that were submitted to [the direct employer] . . . provided safety equipment and tools, including ear-plugs, gloves, a hard hat and safety glasses . . . [a TVA foreman] conducted the initial briefing on the job to be performed; [a TVA foreman] was to guide and direct the work; and TVA could terminate the plaintiff's employment at the TVA facility. The facts in the present case are

sufficiently similar to those in *Tweedy* [*v. TVA*, 882 F.2d 477 (11th Cir. 1989)] to warrant the granting of the defendant's motion.

*Young*, No. 5:04-CV-594-JEO, 2005 WL 6133386, at *9 (bracketed alterations added). The Eleventh Circuit affirmed, holding that "we first agree with the district court's finding that TVA qualified as a special employer of [plaintiff] under Alabama law." *Young*, 439 F.3d at 1274.

In *Tweedy*, TVA entered into a staff augmentation contract with Gilbert/Commonwealth, Inc., ("Gilbert") wherein "Gilbert was to provide personnel to work under TVA's supervision to supplement TVA's regular engineering staff at the Browns Ferry Nuclear Plant." *Tweedy*, 882 F.2d at 478. In affirming the district court's grant of summary judgment in favor of TVA, the Eleventh Circuit concluded that an implied contract of hire existed where:

> The staff augmentation contract between Gilbert and TVA also obligated TVA to pay [plaintiff's] wages and it stipulated that worker's compensation premiums would be paid out of monies paid to Gilbert by TVA. TVA played a significant role in [plaintiff's] hiring and training; [plaintiff] wore coveralls and safety equipment supplied by TVA. TVA employees signed [plaintiff's] time sheets and approved requests for time off.

*Id*. at 480 (bracketed alterations added). The Eleventh Circuit further recognized that in cases where the direct employer "was in the business of contracting out temporary employees to other employers" the Alabama Supreme Court has had "no trouble

concluding that the employer to whom the temporaries were assigned was a special employer for the purposes of the [Workers' Compensation] Act." *Tweedy*, 882 F.2d at 479-80 (citing *Pettaway v. Mobile Paint Mfg. Co.*, 467 So. 2d 228 (Ala. 1985), and *Terry v. Read Steel Prods.*, 430 So. 2d 862 (Ala. 1983)) (bracketed alteration added).

Applying the foregoing principals and precedent to the present case, this court finds that no genuine issue of material facts exists as to whether plaintiff had an implied contract of hire with TVA. TVA set plaintiff's wages in accordance with the "TVA Project Maintenance and Modifications Agreement"; it reimbursed GUBMK for all payroll taxes of plaintiff; it covered his workers' compensation benefits, assigned and supervised his duties, provided equipment necessary to complete his duties; and approved his timesheets and requests for time off. Moreover, plaintiff testified that "[t]he only way I knew I worked for GUBMK was it was on my paycheck."[27] The facts of this action are sufficiently similar to those in the *Young* and *Tweedy* cases to conclude that TVA was a "special employer" of plaintiff. As such, TVA is entitled to the protection provided by the exclusive remedy provisions in Alabama Code § 25-5-53. *See Young*, 439 F.3d at 1275 ("Where TVA meets the test for a special employer, TVA is entitled to the same exclusivity protection afforded every other employer under Alabama law.") (citing *Tweedy*, 882 F.2d 477, 479).

---

[27] Doc. no. 19, Ex. 5 at 26.

## IV. CONCLUSION

Based upon the foregoing, TVA's motion for summary judgment is due to be, and it hereby is, GRANTED. Plaintiff's claims against TVA are DISMISSED with prejudice. Costs are taxed to plaintiff. The Clerk is directed to close this file.

DONE and ORDERED this 6th day of July, 2009.

_____
United States District Judge